**JUSTIN M. BAXTER**
Washington State Bar ID 39182
justin@baxterlaw.com
**KIRSTEN N. BAXTER**
Washington State Bar ID 43929
kirsten@baxterlaw.com
Baxter & Baxter LLP
8835 S.W. Canyon Lane, Suite 130
Portland, Oregon 97225
Telephone (503) 297-9031
Facsimile (503) 291-9172
   Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON AT YAKIMA

| | |
|---|---|
| JASON & TAMRA ERHARDT, And the Marital Community Comprised Thereof,<br><br>Plaintiffs,<br>v.<br><br>U.S. DEPARTMENT OF AGRICULTURE, RURAL DEVELOPMENT,<br><br>Defendant. | NO.<br><br>COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT, *INTER ALIA*<br><br>**DEMAND FOR JURY TRIAL** |

COME NOW, Plaintiffs, JASON & TAMRA ERHARDT, by and through their attorney, BAXTER & BAXTER, LLP, and complain against the Defendant as follows:

### I.    STATEMENT OF THE CASE

PLAINTIFFS' COMPLAINT — 1

1.1 The United States Supreme Court stated in *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz,* 601 U.S. 42, 45, 144 S.Ct. 457, 217 L.Ed.2d 361 (2024) ("*Kirtz")*:

> "A credit report can determine everything from whether a person can secure a credit card, purchase a home, win a new job, or start a small business. Recognizing the importance of accuracy in credit reporting, Congress adopted the Fair Credit Reporting Act in 1970 (FCRA)."

1.2 And, as established in *Kirtz,* Defendant, the U.S. Department of Agriculture Rural Development, is "clearly" not immune from an action under the FCRA. *Kirtz,* 144 S.Ct. at 462.

1.3 This is an action for damages to prevent further harm to Plaintiffs and to prevent future harm to other Washington consumers and citizens and to prevent Defendant's future violations of the Fair Credit Reporting Act ("FCRA").

1.4 Plaintiffs paid off their home loan with Defendant, but then, Defendant failed to credit Plaintiffs for the payoff, charged Plaintiffs for force-placed insurance, and then falsely reported Plaintiffs' credit as seriously in default on the paid-off loan.

1.5 Defendant caused Plaintiffs and their family to pay a higher interest rate for a vehicle loan. Aditionally, plaintiffs were unable to secure a mortgage,

leaving them to live in RVs on undeveloped land, despite Plaintiffs' protest and repeated credit report disputes, while Defendant denies responsibility.

## II. PARTIES

2.1    Plaintiffs, JASON & TAMRA ERHARDT, are natural persons residing in Klickitat County, Washington.

2.2    Defendant, U.S. Department of Agriculture, Rural Development ("USDA" or "Defendant") is a government agency engaged in the business of extending consumer credit in the State of Washington, and which furnishes information to consumer reporting agencies under 15 U.S.C. § 1681s-2.

2.3    Defendant is a "furnisher" within the meaning of the FCRA, 15 U.S.C. §1681s-2 et seq.

2.4    Plaintiffs are "consumers" as defined by the FCRA, 15 U.S.C. §1681a.

## III. JURISDICTION AND VENUE

3.2    Jurisdiction and Venue in the United States District Court, Eastern District of Washington, are appropriate where this dispute involves federal law, where all acts at issue and described herein occurred in this district, where the injury to Plaintiffs occurred in this district, and where Plaintiffs are residents of this district. 15 U.S.C. §1681; 28 U.S.C. §1391(b); 28 U.S.C. §1331.

3.3    Defendant is liable unto Plaintiffs pursuant to the FCRA, 15 U.S.C. §1681 *et seq.* as well as other applicable federal laws.

## IV.    FACTS

4.1    Plaintiff, JASON & TAMRA ERHARDT ("Plaintiffs") have excellent credit.

4.2    In June 2022, Plaintiffs sold their home in Washougal, Washington.

4.3    Their lender, the USDA, sent a payoff for the loan to the Plaintiffs dated June 15, 2022, reflecting a payoff balance of $386,506.30, good until June 30, 2022.

4.4    On June 15, 2022, payment of $386,506.30 was sent to Defendant.

4.5    The check cleared on June 17, 2022.

4.6    Unbeknownst to the Plaintiffs or their title company, Defendant purchased force placed hazard insurance for the property on June 17, 2022.

4.7    Defendant then paid property taxes on the house.

4.8    Plaintiffs received a letter from Defendant stating Plaintiffs owed over $6,000 on or around late 2023.

4.9    Plaintiffs made numerous attempts to correct the USDA's mistake over the phone since they knew they had paid off their mortgage in full when their home sold.

4.10   During that process, Plaintiffs ultimately learned from Defendant that they were being billed for hazard insurance and taxes purchased after the payoff balance was quoted.

4.11   Plaintiffs checked their credit reports and found that payments were reported to the USDA through May 2023.

4.12   Plaintiffs did not pay this alleged debt because as far as they knew, they had paid off Defendant when the property sold.

4.13   Defendant told Plaintiffs that Defendant would continue paying taxes and insurance on the property until Plaintiffs paid the alleged "balance" in full.

4.14   Plaintiffs worked with their title company to dispute Defendant's collection of the alleged "debt."

4.15   On May 1, 2024, the escrow agent who worked on the sale sent Plaintiffs' title documents that proved Plaintiffs had paid the full balance to Defendant.

4.16   The escrow agent sent the Final Settlement Statement, the payoff, the deed, and the tax printout.

4.17   The escrow agent affirmed that she would send a copy of all records to Defendant, but that Plaintiffs should follow up directly with Defendant.

4.18   On May 2, 2024, the Plaintiffs' realtor emailed Patricia Grant, Sr. Loan Specialist with Defendant, and attached the closing documents for the June 2022 sale, proving that Plaintiffs had paid the full payoff balance.

4.19   On May 16, 2024, Ms. Grant emailed Plaintiffs and their realtor, explaining that Ms. Grant was told that Plaintiffs were sent "another payoff statement."

4.20   Ms. Grant expressed confusion because she received no further explanation from Defendant's housing director.

4.21   Ms. Grant explained to Plaintiffs and Plaintiffs' realtor that Ms. Grant would continue to work "to get all the answers."

4.22   On May 21, 2024, Ms. Grant again emailed Plaintiffs and their realtor.

4.23   Ms. Grant explained in her May 21, 2024 email that the "Branch Chief" would telephone the Plaintiffs to explain that "the payoff should have been honored as written" and that Defendant should not have purchased "forced placed hazard insurance" after the payoff quote was issued.

4.24   Plaintiffs never received a call from the Branch Chief or any representative of Defendant.

4.25  Plaintiffs viewed their credit files through consumer reporting agencies Equifax, Experian and Trans Union and saw that Defendant reported the account as "open," "current" and "in good standing" until May 2023.

4.26  In June 2023, the account began reporting as delinquent until Defendant ultimately began garnishing Mr. Erhardt's social security.

4.27  As of March 2025, Defendant reports the account on Plaintiffs' credit files as "open" with a balance of $8,800 and 120 days past due.

4.28  Defendant's credit reporting of the account as 120 days past due is a major derogatory on Plaintiffs' credit that has destroyed their creditworthiness.

4.29  Plaintiff JASON ERHARDT ("Mr. Erhardt") disputed the false reporting to Trans Union and Experian on or around June 2024.

4.30  Trans Union and Experian contacted Defendant regarding Mr. Erhardt's dispute.

4.31  Reinvestigation results from Experian dated June 25, 2024 stated that Experian had contacted Defendant, and Defendant's reporting of a balance of $6,485, and payment history through 2023 and 2024 of 30, 60, 90, 120, 150 and 180 days past due were "verified as accurate."

4.32  Reinvestigation results from Trans Union dated June 26, 2024 stated that Trans Union had contacted Defendant, and Defendant's reporting of a balance

of $6,485, and payment history through 2023 and 2024 of 30, 60, 90, 120, 150 and 180 days past due were "verified as accurate."

4.33   Plaintiff TAMRA ERHARDT ("Ms. Erhardt") disputed the false reporting to Trans Union and Experian on or around January 2025.

4.34   Trans Union and Experian contacted Defendant regarding Ms. Erhardt's dispute.

4.35   Reinvestigation results from Trans Union dated January 28, 2025 stated that Trans Union had contacted Defendant, and Defendant's reporting of a balance of $6,621, and a past due balance of $1,448 were "verified as accurate."

4.36   Trans Union reported Ms. Earhardt's USDA account payment history during 2023 and 2024 of reflects 30, 60, 90, 120, and 120+ days past due, which is a serious derogatory status.

4.37   Reinvestigation results from Experian dated January 27, 2025 stated that Experian had contacted Defendant, and Defendant's reporting of a past due balance was "verified as accurate."

4.38   Plaintiffs have been attempting to obtain financing to build a home for their family on property they own.

4.39   Plaintiffs were denied for a mortgage on or around Spring 2024.

4.40   Plaintiffs were denied for a mortgage a second time on or around December 2024.

4.41   The second denial stated that Plaintiffs were ineligible because of their default to Defendant.

4.42   On February 3, 2025, Plaintiffs were once again denied for a home loan, and the stated reason was "due to the late payments and default with your USDA loan."

4.43   Additionally, Plaintiffs have had their income and tax refunds garnished to pay this false alleged debt.

4.44   Due to Plaintiffs' inability to obtain financing, they have been forced to live on undeveloped land in three separate RVs on their property with their minor children.

4.45   Mrs. Erhardt obtained an auto loan on or around late February 2025 with an interest rate of 24.95%, much higher than she otherwise would have been able to qualify for.

4.46   Overall, since the false reporting began, Plaintiffs have been denied multiple loans for their home, business and car.

4.47   Plaintiffs tried to handle this matter without legal action, to no avail.

4.48  Plaintiffs were forced to engage in many hours of uncompensated labor on behalf of a sophisticated, powerful government agency to try to clean up fraud and false credit reporting that Defendant should have swiftly resolved.

4.49  Plaintiffs seek damages for the harm to their financial lives, their credit and reputation, emotional distress, marital distress, among other harms and losses proximately caused by Defendant.

## V.    FIRST CAUSE OF ACTION

(Federal Fair Credit Reporting Act Violation – §1681s-2(b) – as to Defendant)

5.1  Plaintiffs re-allege sections I through IV, inclusive as though fully set forth herein.

5.2  Creditors or furnishers of information to credit reporting agencies do not fulfill their respective duties to conduct a reasonable investigation into the accuracy and validity of a disputed account simply by reciting the information which is already contained within the consumer credit or account file. *Diprinzio v. MBNA America Bank, N.A.,* 2005 WL 2039175 (E.D. Pa. Aug. 24, 2005).

5.3  The Defendant is not immune from suit under the FCRA. *Kirtz, supra.*

5.4  Defendant violated 15 U.S.C. §1681s-2(b) by continuing to furnish information to the consumer reporting agencies ("CRA") without also notating that the debt was disputed; by failing to fully and properly investigate the Plaintiff's

disputes of Defendant's representations; by failing to review all relevant information regarding same; by failing to accurately respond to CRAs; by failing to correctly report results of an accurate investigation to another consumer reporting agency; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of Defendant's misrepresentations to the consumer credit reporting agencies.

5.5   As a result of this conduct, action and inaction of Defendant, Plaintiffs suffered damages, and continue to suffer, actual damages, including economic loss, damage to reputation, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiffs seek damages in an amount to be determined by the jury.

5.6   Defendant's conduct, action and inaction were willful, rendering it liable to Plaintiff for punitive damages pursuant to 15 U.S.C. §1681n.

5.7   In the alternative, Defendant was negligent, entitling Plaintiffs to recover damages under 15 U.S.C. §1681o.

5.8   Plaintiffs are entitled to recover costs and attorneys' fees from Defendant pursuant to 15 U.S.C. §1681n and/or 15 U.S.C. §1681o.

### VII.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment to be entered against the Defendant as follows:

A.  For Actual and Punitive damages in an amount to be proven at trial, pursuant to 15 U.S.C. §1681 *et seq;*

B.  For Incidental and Consequential damages in an amount to be proven at trial;

C.  For costs and reasonable attorney's fees in an amount to be proven at trial pursuant to 15 U.S.C. §1681 *et seq.;*

D.  For interest on the above amounts as authorized by law;

E.  For other relief as the Court deems just and equitable; and

F.  For leave to amend this complaint as needed and as required.

G.  For leave to seek Civil Rule 23(b) status if information becomes available through discovery supporting the need for class action status.

## XII.  REQUEST FOR TRIAL BY JURY

Plaintiffs hereby request a trial by jury pursuant to U.S. Const. Amend. 7.

Dated this 15th day of October, 2025.

Respectfully submitted,

s/ Justin Baxter
Justin M. Baxter, WSBA ID 39182
justin@baxterlaw.com
s/ Kirsten N. Baxter
Kirsten N. Baxter, WSBA ID 43929
kirsten@baxterlaw.com

PLAINTIFFS' COMPLAINT          12

| | |
|---|---|
| 1 | Baxter & Baxter LLP |
| 2 | 8835 SW Canyon Ln Ste 130 |
|   | Portland, Oregon 97225 |
| 3 | Telephone (503) 297-9031 |
|   | Facsimile (503) 291-9172 |
| 4 | |
|   | <u>s/ SaraEllen Hutchison</u> |
| 5 | SARAELLEN HUTCHISON (WSBA No. 36137) |
| 6 | Law Office of SaraEllen Hutchison, PLLC |
| 7 | 1102 A ST STE 300 PMB 66 |
|   | Tacoma, WA 98402 |
| 8 | Telephone: (206) 529-5195 |
| 9 | Facsimile: (253) 302-8486 |
|   | Email: saraellen@saraellenhutchison.com |
| 10 | |
| 11 | Attorneys for Plaintiffs |

PLAINTIFFS' COMPLAINT                    13